IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
ROBERT L. HARRIS,                )
                                 )
     Plaintiff,                  )
                                 )
     v.                          )      1:07CV314
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of Social Security, )
                                 )
     Defendant.                  )
```

### MEMORANDUM OPINION AND RECOMMENDATION
### OF MAGISTRATE JUDGE ELIASON

Plaintiff Robert L. Harris seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision denying his applications for disability insurance and supplemental security income ("SSI") benefits. The Commissioner's denial decision became final on February 23, 2007, when the Appeals Council concluded there was no basis to review the hearing decision of the Administrative Law Judge ("ALJ"). In this action, the parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

Plaintiff filed an application for disability insurance benefits on June 4, 2006 and for SSI benefits on April 26, 2004 (protective filing date), alleging disability as of April 23, 2004, due to flat feet and epidural lomentosis. A hearing was held before ALJ Jon R. Hunt on September 26, 2006 in Raleigh, North Carolina. A decision denying Plaintiff's claim was issued on October 24, 2006. Plaintiff filed a request for review, and on February 23, 2007, the Appeals Council found no basis on which to

review the ALJ's decision. Plaintiff then filed a request for judicial review in this Court on April 19, 2007.

## **Scope of Review**

The scope of review by this Court of the Commissioner's decision denying benefits is limited. <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). The Court must review the entire record to determine whether the Commissioner has applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Where this is so, the Commissioner's findings are conclusive. The Court may not reweigh conflicting evidence that is substantial in nature and may not try the case <u>de</u> <u>novo</u>. <u>Id.</u> The Court may not make credibility determinations or substitute its judgment for that of the ALJ's. <u>Johnson v. Barnhart</u>, 434 F.3d 650, 653 (4th Cir. 2005). "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," <u>Richardson v. Perales</u>, 402 U.S. 389 (1971) (citations omitted), or "evidence which . . . consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted).

In reaching a decision on Plaintiff's claim, the ALJ followed a five-step analysis set out in the Commissioner's regulations. 20 C.F.R. §§ 404.1520, 416.920 (2007). Under the regulations, the ALJ is to consider whether a claimant (1) is engaged in substantial

-2-

gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. The burden of persuasion is on the claimant through the fourth step. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). If the claimant reaches the fifth step the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education and work experience. Id.

In this case, the ALJ found that Plaintiff meets the disability insured status requirements of the Social Security Act and remains insured until December 31, 2008. (Tr. at 15.) At the first step of the sequential evaluation, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability. (Id.)

The second step in the sequential evaluation process is to determine whether Plaintiff has a severe impairment. A severe impairment is one which, either separately or in combination with another impairment, significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c) (2007). At step two, the ALJ found that Plaintiff has the severe impairments of flat feet, hypertension, low-level diabetes, obesity and low back pain. (Tr. at 15.) At step three of the sequential evaluation, the ALJ found that Plaintiff did not have an impairment, or combination of

impairments, that met or equaled a listing in Appendix 1, Subpart P, Regulation Number 4. (Id. at 16.)

The ALJ concluded his evaluation of Plaintiff's residual functional capacity at steps four and five by noting that Plaintiff no longer retained the residual functional capacity to perform his past relevant work as a mental retardation aide, security guard, cook or barber, he was able to perform medium level work with a sit/stand option, only occasional bending, and no climbing or working around heights or hazards. (Id.) However, based on Plaintiff's residual functional capacity, age, education and work experience, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Id. at 20.) Plaintiff, therefore, is "not disabled" as defined in the Social Security Act. (Id.)

In this action, Plaintiff's first argument is that the ALJ erred at step two of the sequential evaluation in not finding Plaintiff's depression a "severe" impairment. (Docket No. 15, Br. in Supp. of Pl.'s Mot. for J. on the Pleadings, at 6-7.) An impairment is "severe" if it significantly limits a claimant's physical or mental ability to perform basic work activities.[1] 20 C.F.R. §§ 404.1521a, 416.921a (2007). The Fourth Circuit has held

---

[1] Basic work activities include: physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or hearing; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in routine work setting. 20 C.F.R. § 404.1521(b) (2007).

-4-

that in order to find an impairment non-severe, the impairment must be "a <u>slight abnormality</u> which has such a <u>minimal effect</u> on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." <u>Evans v. Heckler</u>, 734 F.2d 1012, 1014 (4th Cir. 1984)(emphasis in original)(quoting <u>Brady v. Heckler</u>, 724 F.2d 914, 920 (11th Cir. 1984)). The burden is upon Plaintiff to provide medical evidence establishing the existence and severity of his claimed impairments and to establish how those impairments affect his functioning. 20 C.F.R. §§ 404.1512(a), 416.912(a)(2007); <u>Hunter</u>, 993 F.2d at 35.

The Court is mindful that the threshold for an impairment to be considered "severe" at step two of the sequential evaluation is low; however, substantial evidence supports the ALJ's finding that Plaintiff did not establish that his depression is "severe." When Plaintiff applied for disability insurance and SSI benefits, he did not claim to be disabled by depression or any other mental impairment, nor is there any record of depressive symptoms at that time. (<u>See</u> Tr. at 92.) In fact, the only record of any complaints of depressive symptoms came in October 2004, when Plaintiff reported being stressed, depressed and angry with his son. (<u>Id.</u> at 381.) Dr. Bradley Kolls, a treating psychiatrist at the VA, diagnosed Plaintiff at that time with adjustment disorder with mild depressive symptoms. (<u>Id.</u> at 384.) He prescribed an

-5-

Case 1:07-cv-00314-WO-RAE   Document 19   Filed 11/25/08   Page 5 of 15

antidepressant for short-term use to deal with Plaintiff's stressor, but did not contemplate long-term treatment. (Id.)

By December 2004, Plaintiff reported to the VA that he was feeling a lot better with no problems. (Id. at 362.) In February 2005, Plaintiff began stress management group therapy "to gain from connecting to others." (Id. at 353.) He reported that although he had felt depressed some months earlier, his situation had improved and he no longer felt depressed. (Id.) Following the initial meeting, however, it appears that Plaintiff failed to attend any subsequent sessions. (Id. at 348.)

Plaintiff's failure to seek counseling or therapy is inconsistent with his claim of a "severe" mental impairment. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994)("an unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility"). The medical record indicates that Plaintiff's depressive symptoms were short-lived and mild. Thus, substantial evidence supports that ALJ's finding that the adjustment disorder was not "severe" within the meaning of the Social Security Act.

Plaintiff next argues that there is not substantial evidence to support the ALJ's finding that Plaintiff does not meet Listing 9.08, Diabetes. (Docket No. 15, Pl.'s Br., at 8.) Listing 9.08A

-6-

requires in relevant part that Plaintiff show he has diabetes mellitus with:

> Neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbances of gross and dexterous movements, or gait and station.

20 C.F.R. Pt. 404, Subpt. P, App.1, § 9.08A. As used in the listing, "persistent disorganization of motor function" means "paresis[2] or paralysis, tremor or other involuntary movements, ataxia[3] and sensory disturbances." 20 C.F.R. Pt. 404, Subpt. P, App.1, § 11.00C.

Plaintiff contends that his chronic foot pain, "believed to be caused" by diabetic neuropathy and pes planus, combined with pain caused by plantar fasciitis, osteoarthritis and morbid obesity, meets or equals Listing 9.08A. (Docket No. 15, Pl.'s Br., at 9.) He argues that his inability to walk short distances, caused by bilateral pain, satisfies the "persistent disorganization of motor function" criteria, and that he has sustained disturbance of gait and station. (Id.) The Court disagrees and finds that the ALJ's finding is supported by substantial evidence.

The medical records do not support a finding that Plaintiff suffers from "significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of

---

[2] Slight or incomplete paralysis. Dorland's Illustrated Medical Dictionary (27th ed. 1988).

[3] Failure of muscle coordination; irregularity of muscular action. Dorland's Illustrated Medical Dictionary (27th ed. 1988).

-7-

gross and dexterous movements, or gait and station." There is no evidence of paresis, paralysis, tremor or other involuntary movement nor is there evidence of ataxia. Thus, Plaintiff has not demonstrated the required persistent disorganization of motor function. In fact, the evidence shows that Plaintiff's motor functions are sufficiently intact to engage in exercise, including walking, lifting weights, and stationary bike riding, and that his physicians recommended continued exercise. (Id. at 287, 305, 352, 356, 361, 368, 374.) He is also able to drive. (Id. at 433.) Indeed, contrary to being of Listing severity, Plaintiff's diabetes was controlled by diet, and Plaintiff was declined to take medication for his diabetes. (See, e.g., id. at 280, 356, 424.)

In addition, the evaluation of a non-treating agency physician supports the ALJ's finding. Dr. Maqsood Ahmed examined Plaintiff in December 2004 and reported that Plaintiff had a normal gait pattern and was able to walk without any assistive device. (Tr. at 194.) He had normal reflexes and strength and was able to get on the examination table without difficulty. (Id.) An examining state agency physician's opinion, when consistent with other evidence in the record, can constitute substantial evidence in support of the ALJ's findings. Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986); Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984).

Plaintiff next argues that the ALJ erred in failing to include all of Plaintiff's limitations in his hypothetical question to the

-8-

vocational expert. (Docket No. 15, Pl.'s Br., at 10.) The Court disagrees and finds that the ALJ's step five determination is supported by substantial evidence. At step five of the sequential evaluation, the burden shifts to the Commissioner to demonstrate that there are jobs in the national economy which Plaintiff can perform, considering his age, education and vocational experience in conjunction with his residual functional capacity. See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981).

In this case, the ALJ found at step four of the sequential evaluation that Plaintiff had a residual functional capacity for medium work with a sit/stand option, but only occasional bending and no climbing, heights or hazards. (Tr. at 16.) Because Plaintiff suffers from both exertional and nonexertional limitations, the ALJ was required to demonstrate through the use of vocational testimony that despite his limitations, Plaintiff can perform other jobs in the national economy. See Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

For a vocational expert's opinion to be relevant, it must be based on a hypothetical question that incorporates all of a claimant's impairments. Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989). At the hearing, the ALJ asked the vocational expert whether there was work in the local and national economy for an individual of Plaintiff's age, education, and work experience who is able to sit without limitation, stand and walk short distances at least four hours of an eight-hour workday with a sit/stand

-9-

option, lift up to fifty pounds occasionally and twenty to twenty-five pounds frequently, and bend occasionally, but with no ability to climb ladders, ropes or scaffolding. (Id. at 436.) The vocational expert testified that Plaintiff could work as a hand packager, production assembler, and cashier (Id. at 436-37.)

Plaintiff contends, however, that the ALJ erred in failing to include "significant non-exertional limitations," including Plaintiff's adjustment disorder, pain, and obesity. (Docket No. 15, Pl.'s Br., at 10.) The ALJ has "great latitude" at step five in posing hypothetical questions to a vocational expert, and the ALJ is free to accept or reject restrictions as long as there is substantial evidence supporting his decision. Koonce v. Apfel, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999)(citing Martinez v. Heckler, 807 F.2d 771,774 (9th Cir. 1986))(unpublished decision). The Court has already determined that Plaintiff has not met his burden in establishing that his adjustment disorder limited his ability to perform basic work activities. Accordingly, there was no error by the ALJ in excluding it from his hypothetical question to the vocational expert.

The Court also agrees with the Commissioner's position that the ALJ adequately accounted for limitations resulting from Plaintiff's pain and obesity by limiting him to work involving only walking short distances with a sit/stand option, only occasional bending, and no climbing, heights or hazards. Because the ALJ's questions to the vocational expert included all of the restrictions

-10-

in his assessment of Plaintiff's residual functional capacity, the ALJ's step five determination is supported by substantial evidence. See Walker, 889 F.2d at 50-51.

Finally, Plaintiff argues that the ALJ committed reversible error by improperly evaluating Plaintiff's pain under Craig v. Chater, 76 F.3d 585 (4th Cir. 1996.) (Docket No. 15, Pl.'s Br., at 11-15.) Under the regulations, the determination of whether a person is disabled by pain or other symptoms is a two-step process. Craig, 76 F.3d 585. First, there must be objective medical evidence showing the existence of a medical condition or impairment which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. Id. at 594. This does not mean just any pain or some pain, but rather the pain from which Plaintiff alleges he suffers. Id. Second, and only after the Plaintiff has met the threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, the Commissioner must determine the intensity and persistence of the Plaintiff's pain, and the extent to which it affects the ability to work. Id. at 595. In making this determination, the ALJ may consider the presence or lack of objective evidence of pain, inconsistencies in the evidence, and statements by Plaintiff and physicians, in short, all relevant evidence in making an evaluation of the credibility of plaintiff's subjective complaints of pain. Id. at 595-96.

-11-

Subjective allegations of severe pain may be discounted when not supported by objective medical evidence and/or supporting medical opinions are made without any testing. Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005). The failure to seek help also constitutes a reason for discounting subjective claims. Id. Finally, the ALJ may discount subjective complaints of pain based on credibility determinations, including evasive, unclear or exaggerating testimony by Plaintiff, or at odds with Plaintiff's routine activities. Id.

On the other hand, if Plaintiff suffers from a condition that can cause chronic pain, a treating physician's finding that the condition is "exacerbated by exertion and prevents . . . steady employment" is an important finding which may not be ignored by the ALJ. Hines v. Barnhart, 453 F.3d 559 (4th Cir. 2006). If that condition can produce pain that does not normally exhibit itself by objective signs, the ALJ may not require objective evidence of pain or use the lack of signs to discredit Plaintiff's subjective evidence of pain. Thus, once Plaintiff produces "objective medical evidence of a condition reasonably likely to cause the pain claimed, [Plaintiff is] entitled to rely exclusively on subjective evidence" to show that the severity or continuous nature of the pain prevents Plaintiff from working. Id. at 565. In reviewing the subjective evidence, the ALJ may not select only the subjective evidence that supports the ultimate conclusion. Moreover, the

-12-

Commissioner has the burden of proving that Plaintiff can perform work available in the community. Id.

Here, the ALJ found that Plaintiff has an impairment which could reasonably be expected to produce pain in the amount or degree he alleges, but that his statements about the intensity, persistence and limiting effects of his symptoms are not entirely credible. (Tr. at 19.) Plaintiff argues that because the ALJ found at step one of the Craig analysis that Plaintiff has an impairment which could cause the pain alleged, there is "something of a presumption that [Plaintiff] is to be believed" and his testimony is entitled to "great weight." (Docket No. 15, Pl.'s Br., at 12-13.) Despite Plaintiff's citation to one District of Virginia case,[4] the Fourth Circuit has not adopted this standard. The Fourth Circuit has held instead that an ALJ need not accept subjective complaints of pain "to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain [Plaintiff] alleges she suffers." Craig, 76 F.3d at 595.

---

[4] Plaintiff cites to Hilliard v. Barnhart, No. Civ. A. 5:04CV00102, 2005 WL 2429930 (D. Va. Sept. 29, 2005), stating that the Court, citing Craig, reversed the ALJ's finding because there was no evidence that the plaintiff was a malingerer or overstated his symptoms. (Docket No. 15., Pl.'s Br., at 12.) Plaintiff's characterization of the holding is misleading. The Hilliard court found that the ALJ erred in rejecting reports for treating and examining physicians that the plaintiff was disabled in that the reports, and the plaintiff's testimony, were consistent with the medical record, and cites to Craig for this proposition. Hilliard, 2005 WL 2429930, at *4. The court's observation that there is no indication that the plaintiff is a malingerer is dicta.

-13-

The ALJ found that Plaintiff's testimony concerning his pain and limitations was inconsistent with the weight of the medical findings. (Tr. at 19.) On review, the Court finds that this is supported by substantial evidence. As the ALJ notes, despite Plaintiff's claims of disabling back pain, "there is no radiographic evidence of any spinal disorder" and Plaintiff was prescribed only minimal treatment for his pain. (Id.) Further, none of Plaintiff's treating physicians placed restrictions on Plaintiff's activities and, in fact, directed Plaintiff to exercise regularly.

The examining agency physician, Dr. Ahmed, found Plaintiff's back examination to be "unremarkable other than localized tenderness" with negative straight leg raise and normal strength and mobility. (Id. at 195.) Dr. Ahmed also reported that Plaintiff was able to walk with a normal gait unassisted and had good mobility. (Id. at 194-95.) He was also able to bend over and remove his own shoes and got on the examining table without difficulty. (Id. at 195.)

Plaintiff's testimony that he suffers disabling pain is also inconsistent with reports concerning his activities of daily living. Plaintiff is able to live alone, drive, run errands, and wash dishes. (Id. at 64.) He is able to bathe and dress himself. (Id. at 335.) Plaintiff reported repeatedly to his health care providers that he exercised regularly, including riding a

stationary bike, walking, and lifting weights.  (Id. at 239, 287, 320, 352, 356.)

The ALJ is responsible for making credibility determinations. See Craig, 76 F.3d at 589 ("'Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ.'")(quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)).  The Court will "not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]."  Id. (citing Hays, 907 F.2d at 1456).  Here, the inconsistency between the severity of the pain claimed by Plaintiff and the record as a whole is substantial evidence in support of the ALJ's finding concerning Plaintiff's credibility.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (docket no. 14) be denied, that Defendant's motion for judgment on the pleadings (docket no. 17) be granted, and judgment be entered dismissing this action.

_____
**United States Magistrate Judge**

November 25, 2008